## MEYERS v. BARENBURG.

### No. 2881.

District Court, D. Maryland.

Sept. 19, 1946.

Samuel H. Feldstein, of Baltimore, Md., for plaintiff.

Paul B. Mules and Robert E. Coughlin Jr., both of Baltimore, Md., for defendant.

COLEMAN, District Judge.

This is a suit brought under Section 8(b) (B) and Section 8(e) of the Selective Training and Service Act of 1940, as amended, 50 U.S.C.A.Appendix, § 308(b) (B), and Sec. 308(e), the plaintiff claiming that he has been denied the reinstatement and compensation to which he is entitled under those provisions.

The first of the above mentioned provisions in the statute is as follows: "In the case of any such person [inductee] who, in order to perform such training and service, has left or leaves a position, other than a temporary position, in the employ of any employer and who (1) receives such certificate [of satisfactory completion of period of training and service], (2) is still qualified to perform the duties of such position, and (3) makes application for reemployment within ninety days after he is relieved from such training and service or from hospitalization continuing after discharge for a period of not more than one year—

\*  \*  \*  \*  \*

"(B) if such position was in the employ of a private employer, such employer shall restore such person to such position or to a position of like seniority, status, and pay unless the employer's circumstances have so changed as to make it impossible

or unreasonable to do so; * * *." 50 U.S.C.A.Appendix § 308(b) (B).

The second provision of the statute upon which defendant relies confers upon the District Courts jurisdiction to hear all suits brought to enforce the aforegoing, and related provisions. 50 U.S.C.A.Appendix, § 308(e).

Defendant has raised but not seriously contested the point that his employment relationship with the plaintiff was not such as to bring plaintiff within the scope of Section 8(b) (B) of the Act above quoted; that is to say, that the position which the plaintiff held prior to his induction into the armed forces, was not a position "in the employ of a private employer", but that plaintiff's status was that of an independent contractor.

We believe there is no merit in this initial contention because, as will appear from the summary which we are about to give of the character of the professional work in which defendant was engaged and of the character of plaintiff's employment by him, the relationship between them was clearly that of private employer and employee. See Kay v. General Cable Corp., 3 Cir., 144 F.2d 653. Plaintiff's position and work in no sense had the indicia of an independent contractor. The employment in the present case is clearly distinguishable from that in such cases as Frank v. Tru-vue, Inc., D.C., 65 F.Supp. 220; MacMillan v. Monteceto Country Club, D.C., 65 F.Supp. 240.

The defendant is a Baltimore physician specializing in the examination and treatment of the eye and the prescribing and furnishing of eye-glasses to his patients. He has a large professional practice, most of which is conducted by extending credit for installment payments due by his patients and customers. Plaintiff, a Baltimore lawyer, was first employed by the defendant about July 1, 1942, to collect regular and delinquent installment payments. He served defendant in this capacity for a year, that is, until July 1, 1943, when he was inducted into the armed forces. While so engaged in work for the defendant, plaintiff was on a salary basis of $32 a week, plus commissions on his collections, with the result that he averaged about $150 a month income from this work. Except with respect to patients or customers residing in the western section of Baltimore who were indebted to defendant—another individual being also employed on a similar basis as collector for that locality —the plaintiff was the only person employed as collector by the defendant at the time plaintiff left to enter the Service.

For about three months after plaintiff went into the Army, defendant paid a person to take plaintiff's place a similar salary and commissions, but thereafter, defendant compensated this person through commissions only and he was not employed after July, 1944. In January, 1944, while the plaintiff was still in the Army, defendant employed still another person— solely on a commission basis—to look after his installments accounts, who served in this capacity until January, 1946, that is, for about two years, the person previously mentioned as having done some collection work concurrently with the plaintiff prior to the latter going into the Army, having also severed his connection with the defendant. Also, during the early part of 1944 the services of a collection agency were used by the defendant but, likewise, on a commission basis only. After about a year, this agency virtually ceased to do any work for defendant because of the great decline in his accounts.

On or about February 1, 1945, the plaintiff obtained an honorable discharge from the Army and sought reinstatement with the defendant who shortly thereafter offered him, and he accepted, a temporary position of lower grade and less compensation than he, the plaintiff, had previously enjoyed, pending making some rearrangement with respect to the services of the other person, above referred to, who had been employed in plaintiff's place since January, 1944. The defendant had not paid to any individual or firm for collection work any salary subsequent to September, 1943. After some weeks, defendant offered plaintiff a permanent position as sole collector in the same territory in which he had worked as collector before he entered the Service, but solely on a commission basis. This, the plaintiff re-

fused to accept, claiming that it did not meet the requirements of the Act by which he was entitled to be reinstated to a position of "like pay" which, as he claimed, could only be accomplished by paying him a flat salary and commission. Defendant refused to meet plaintiff's demand, whereupon the latter terminated his relations with the defendant and brought this suit.

The precise question for decision is this: Was the defendant justified, under the provisions of Section 8(b) (B) of the Act, in refusing to reinstate the plaintiff on the basis of compensation which plaintiff demands? In other words, has the defendant sustained the burden, which by the Act rests upon him, the employer, of proving that "[his] circumstances have so changed" between the time when the plaintiff left the employment of the defendant and when he applied for reinstatement "as to make it impossible or unreasonable" for the defendant to restore the plaintiff to a position of "like pay"? It is not, and we do not think it can be successfully contended, that the plaintiff was not offered a position equivalent in "seniority" and "status" to that which he held when he entered the Service. Indeed, plaintiff appears to have understood that he was offered, exclusive of anyone else, the work of handling all of defendant's collection business, for what it might be worth, but only on a commission basis. This the plaintiff claims is less compensation than the Act entitles him to. So the only question is whether he is entitled to receive also a salary equivalent to that which he had previously enjoyed.

The weight of the credible evidence requires a finding that the Act does not, under the facts as they have been disclosed, require the defendant to pay the plaintiff his former, or any, salary. Nor do we find that the defendant acted unreasonably, or in violation of the requirements of the Act, in delaying, as he did, a decision as to what permanent, instead of temporary position, he would afford plaintiff.

It is to be noted that the Act exempts the employer from making a reinstatement completely equivalent to the former job if "the employer's circumstances have so changed as to make it impossible or unreasonable to do so." We will assume that the word "impossible", as used in the statute, is to be given a literal interpretation, and that therefore the present case is clearly not one where we can say that it would be "impossible" for the defendant to reinstate the plaintiff because of change in the defendant's circumstances. However, such a finding is not necessary in order to support defendant's position, provided defendant's circumstances so changed while plaintiff was in the Service that it would now be "unreasonable" to require defendant to reinstate him on a salary basis.

The testimony shows that, in 1942, when plaintiff entered defendant's employment, the defendant had on his books more than $32,000 in outstanding accounts, representing 4,115 individual accounts. The corresponding figures for 1943 were $24,640 and 3,213 accounts; for 1944, they were $9,673 and 1,270 accounts; for 1945, they were $6,078 and only 707 accounts; and in February, 1945, that is, at the time when plaintiff sought reinstatement, the outstanding accounts amounted to $5,819, represented by 731 individuals. These figures stand uncontradicted and indicate a very substantial decline in defendant's professional work while plaintiff was in the Service, which defendant testified was due very largely to the fact that, during the peak period of the war, he was called upon to make an abnormal number of eye-examinations for workers in local war-plants, and that, as war production, and consequently the amount of war-plant labor became greatly reduced when the war ended, these examinations fell off correspondingly.

In addition, the testimony discloses the following important figures: during October, 1942, the plaintiff was paid by the defendant, in commissions, $170; in November, 1942, $128; and in April, 1943, $124; or a total for these three months of $422. During the same months, the only other collector employed by the defendant was paid a total of $282 in commissions. These figures show an average of total monthly commissions of approximately $235 paid to both collectors during these three months.

When we turn to the later period when the plaintiff was given temporary reinstatement pending some final agreement with respect to his employment by the defendant which, as already stated, was never reached —a period during which the plaintiff, a collection agency, and also a third individual were all engaged for approximately six months, we find the following payments—all on a commission basis only: to the agency, $262; to the other individual collector, $258; and to the plaintiff, $145, a total of $665, or an average per month of approximately $110 which the defendant was expending in commissions to carry on the collection of his installment accounts, as opposed to an average of more than twice that amount in the three months above referred to, in 1942 and 1943.

These figures, without more, would seem clearly to indicate that there is nothing padded —no misrepresentation, in defendant's position. He and his counsel, as well as the manager of the collection agency who testified in his behalf, stated that his business showed a very material falling off, which doubtless justified retrenchment along several lines. The question is: Was he justified in adhering to this retrenchment in outlay for collecting accounts when the plaintiff sought restoration of his former position?

We believe that the defendant was so justified. The figures speak for themselves. To decide otherwise would be tantamount to saying that, although there is no need to have a particular type of position in a given business, nevertheless, the Act requires that it be set up again for the benefit of the ex-serviceman. If defendant had first ceased to pay a salary for this type of work at or about the time when the plaintiff sought reinstatement, that might raise a different question. But here we have a case in which it has not been shown, by any credible testimony, that the defendant had any motive in cutting down on this part of his overhead expense except to conserve his greatly reduced income; and that he took this step more than two years prior to the time when plaintiff applied for reinstatement, showing that it was not in any sense personal to the plaintiff.

We agree with such statements as are contained in the case of Kay v. General Cable Corporation, supra, that some very clear reason must be given for the refusal on the part of the employer to give reinstatement to the returning veteran according to the express terms of the Act. We agree that "unreasonable" means more than "inconvenient" or "undesirable"; otherwise, the main purpose of the Act would be defeated, and ex-service men would be subject to the caprice of former employers as to whether they might get back their pre-war positions. As was said in that case (3 Cir., 144 F.2d 653, at pages 655, 656): "Men and women returning from military service find themselves, in countless cases, in competition for jobs with persons who have been filling them in their absence. Handicapped, as they are bound to be by prolonged absence, such competition is not part of a fair and just system, and the intention was to eliminate it as far as reasonably possible. The Act intends that the employee should be restored to his position even though he has been temporarily replaced by a substitute who has been able, either by a greater efficiency or a more acceptable personality, to make it desirable for the employer to make the change a permanent one."

In the present case there is no question of competition or personality involved, but merely the abolition of a salary arrangement long prior to the return of the plaintiff, because the defendant decided, reasonably and honestly, as we believe, due to a very substantial reduction in the number of those whose eyes he examined, that he no longer required the services of a salaried collector.

We have been referred to no case with similar facts which goes counter to the conclusion here reached.

■ The Court will sign an order in conformity with this opinion, giving judgment in favor of the defendant, no costs, however, to be assessed against the plaintiff, because he is expressly relieved from them by Section 8(e) of the Act, 50 U.S.C. A. Appendix § 308(e).