## FEATHERSTON v. JERSEY CENTRAL POWER & LIGHT CO.

### No. 9296.

Circuit Court of Appeals, Third Circuit.

Submitted Feb. 17, 1947.

May 19, 1947.

O'CONNELL, Circuit Judge, dissenting.

Durand, Ivins & Carton, and J. Victor Carton, all of Asbury Park, N. J., on the brief, for appellant.

Autenrieth & Wortendyke, of Newark, N. J., on the brief, for appellee.

Before O'CONNELL and KALODNER, Circuit Judges, and FOLLMER, District Judge.

FOLLMER, District Judge.

The appellant, a physician, filed a petition in the District Court under the provisions of the Selective Training and Service Act of 1940, 50 U.S.C.A.Appendix, § 301 et seq., seeking reinstatement and claiming compensation for loss of wages alleged by him to have been suffered by reason of the appellee's refusal since January 1, 1946, to re-employ him as "Medical Director."

The appellant had been a practicing physician in New Jersey since 1924 and on or about June 8, 1934, was employed by the appellee as Chief Company Physician "in a capacity similar to that of * * * general counsel." The circumstances surrounding such employment were that at about this time the appellee, which employed approximately eighteen hundred persons, changed its insurance carrier and under an arrangement with the new carrier, the appellee undertook to operate and control investigation and defense of claims and medical supervision of employees' functions which had theretofore been controlled and handled directly by the carrier. That it was considered primarily the responsibility of the carrier is however evidenced by the fact that the carrier reimbursed the appellee for the monthly allowance to the appellant and for the fees and expenses of other physicians, counsel and investigators

in connection with the claims against the appellee and any subsequent litigation.

Under the original arrangements no salary had been agreed upon but after the first two months, during which monthly bills were submitted by appellant, it was agreed that he should be compensated at the rate of two hundred fifty ($250) dollars monthly, for what is referred to as his executive work, and should be allowed, in addition thereto, fees for medical examinations, treatments, and unusual conferences. When this new arrangement was entered into with the insurance carrier in 1934, and when the appellant assumed his duties, he occupied a desk in an office shared with appellee's Safety Director, Claims Investigator, and Welfare Director. He revised medical forms used by the appellee, was responsible for the designation of physicians for pre-employment examinations and treatments in various localities, and he sometimes made these examinations himself on applications for employment from persons residing in the vicinity of Asbury Park, New Jersey. For such services he received fees in addition to his monthly salary, on vouchers submitted therefor, the same as any of the other physicians designated by the appellee in the various localities. This arrangement continued until October 6, 1942, when the appellant entered the United States Army as a Major.

At the company office the appellant performed only executive duties in the nature of reviewing his files on compensation cases, non-compensation cases, and pre-employment medical records. During this period appellant was maintaining three other offices, two for other business concerns by whom he was employed as medical examiner, and one office for his general practice. At the same time he was an attending surgeon on the staff of two hospitals, and was also retained as a medical examiner by another concern, although not having a separate office with that concern.

The amount received from the appellee was not a large portion of, but, on the contrary, a minor part of the income received by the appellant from these various sources as a physician. While the appellant made what might be termed a daily appearance at his office in the appellee's plant he de-

cided when he would go there, he arranged his own vacation schedule, and time he spent at the appellee's office varied from fifteen minutes to about an hour and a half.

The appellant's service in the Army, with the rank of Lt. Colonel, terminated November 28, 1945, with his terminal leave expiring February 2, 1946. Upon his return from such service he duly made his application for re-employment. In the intervening period, however, there had been a shift in the presidency of the appellee and in 1944 the ownership of the appellee changed. Its common stock came under the control of the Associated Gas and Electric Company, now General Public Utilities Company, and the immediate holding company became NY PA NJ Utilities Company.

Among the changes occurring at that time and incident to the shift in ownership as above indicated, there was a change of insurance carriers, the new carrier being the one used generally by the new system of ownership. The new carrier did not follow the method used by the previous carrier but employed counsel, medical examiners, and investigators of its own choosing. Consequently, the department which the appellant had formerly supervised ceased to exist and its former personnel was no longer in the employ of the appellant. The appellee still requires pre-employment examinations but such examinations are made by the physicians in the various localities depending upon the residence of the applicant, the same as was done prior to appellant's entry into the armed forces, and fees for such services are paid as the need for such examination arises, the same as formerly.

As we have already pointed out, these services were not part of the executive duties for which the appellant received his monthly salary.

The appellee defended upon two grounds: (1) That the appellant did not hold a position in the employ of the appellee within the meaning of the Statute at the time he entered the Army, and (2) that appellee's circumstances had so changed as to make it impossible or unreasonable to reengage the services of the appellant.

The District Court, without deciding the first question, dismissed the petition on the second ground.

Appellant contends that the conditions which existed when he left the appellee's employ still prevail with the exception that the appellee had changed its policy and delegated to an insurance company a portion of the duties that the appellant previously discharged.

We have carefully reviewed the record in this case. The Court's findings of fact are fully supported by the evidence and there is no substantial dispute in relation thereto. The sole question is whether such facts sustain the Court's conclusion that appellee's circumstances had so changed that it would be unreasonable to compel it to re-employ appellant.

Appellant contends that the decision of this Court in Kay v. General Cable Corporation, 3 Cir., 144 F.2d 653, 655, which also involved a physician, is controlling. In that case the plaintiff was not only a physician for the defendant company but was employed as a physician for an employees' Health Association. Upon his return from the service the employees' Health Association declined to reëmploy him, preferring the new physician. The defendant company thereupon also declined, contending that it made for greater efficiency to have the same physician for the company and for the health association.

This Court in the Kay case (supra) held that:

"Accepting the defendant's contention that there would be some loss of efficiency and possibly some additional expense involved, more than that is needed to justify refusal to reinstate a person within the protection of the Act. In most cases it is possible to give some reason for the refusal. 'Unreasonable' means more than inconvenience or undesirable. The defendant's argument upon this point, if carried to its necessary conclusion, would defeat the main purpose of the Act and limit its operation to merely capricious or arbitrary refusals. Men and women returning from military service find themselves, in countless cases, in competition for jobs with persons who have been filling them in their absence. Handicapped, as they are bound to be by prolonged absence, such competition is not part of a fair and just system, and the intention was to eliminate it as far as reason-

ably possible. The Act intends that the employee should be restored to his position even though he has been temporarily replaced by a substitute who has been able, either by greater efficiency or a more acceptable personality, to make it desirable for the employer to make the change a permanent one."

Other Courts have also so held.[1]

We have here no occasion to change what we previously stated, nor do we mean to intimate here that physicians [2] or attorneys [3] may not, as distinguished from the term "independent contractor," under proper circumstances be considered as "employed," within the meaning of the Act, nor are we taking issue with the decisions involving a situation where merely the particular position ceased to exist but some other position of like seniority status and pay was available.[4]

The position in this case may in a sense be called temporary in that it existed only so long as the insurance carrier permitted the particular arrangement by delegating its duties to the appellee. The then insurance carrier, as well as the new one, could have changed or terminated this arrangement at any time, but more important, so far as the supervisory work which appellant performed prior to his entry into the Army is concerned and for which he was paid the salary which he is now seeking, there is no such position nor any equivalent position now existing in this company.[5] The insurance carrier could not be required to continue the arrangement. The new ownership had its own insurance carrier which could and did refuse to reimburse appellee for such expenses, preferring, as it did, to control the same directly, as had been done prior to the appellant's employment.

The correspondence shows that the possibility of such a change was anticipated when appellant went into the Army. The change took place in 1944 and not when appellant sought reinstatement. No ulterior purpose motivated the appellee in taking the action which it did in so far as it related to the employment of this appellant.

This is not a situation involving caprice, nor is the refusal based upon mere "inconvenience" or "undesirability." There is now no need for this particular type of physician in this company and the Act under all of the circumstances of this case does not require it to be set up again for the benefit of this ex-service man.

As we said in the Kay case, supra, with reference to a bona fide change in an employer's circumstances:

"The Act says, unless the 'employer's' circumstances have changed. *Primarily, no doubt, this was intended to provide for cases where necessary reduction of an employer's operating force or discontinuance of some particular department or activity would mean simply creating a useless job in order to reemploy the plaintiff * * *."* (Emphasis supplied.)

We are of the opinion, under all of the facts and circumstances, that there was here such a change as would make it unreasonable to require the appellee to re-engage the appellant.

In view of our conclusion on this question, it becomes unnecessary to consider the other question as to whether appellant held a position in the employ of the appellee within the meaning of the Statute at the time he entered the army.

The judgment of the District Court is affirmed.

O'CONNELL, Circuit Judge (dissenting).

As is stated in the majority opinion, there is no substantial dispute as to the facts adduced at the trial of this case. Petitioner, the medical director of a corporation, obtained leave of absence to serve with the armed forces; upon his return, he was denied restoration to his former position. The statutory provision governing decision reads as follows: "if such position was in the employ

---

[1] MacMillan v. Montecito Country Club, Inc., D.C.Cal., 65 F.Supp. 240; Houghton v. Texas State Life Insurance Company, D.C.Tex., 68 F.Supp. 21; Meyers v. Barenburg, D.C.Md., 68 F.Supp. 697.

[2] Kay v. General Cable Corp., 3 Cir., 144 F.2d 653.

[3] Meyers v. Barenburg, supra.

[4] Sullivan v. West Co., Inc., D.C.E.D. Pa., 67 F.Supp. 177.

[5] McFadden v. Dienelt, D.C.Cal., 68 F. Supp. 951.

of a private employer, such employer shall restore such person to such position or to a position of like seniority, status, and pay unless the employer's circumstances have so changed as to make it impossible or unreasonable to do so." 50 U.S.C.A.Appendix, § 308 (b) (B). The facts have raised two issues: (1) Was petitioner "in the employ" of respondent? And (2) have respondent's circumstances so changed as to make the restoration of petitioner "unreasonable"? Both the lower court and the majority of this court, without deciding the first issue, have answered the second issue in the affirmative. With this conclusion I am constrained to disagree.

It is unnecessary to deal at length with the question left undecided. As is pointed out in Kay v. General Cable Corp., 3 Cir., 1944, 144 F.2d 653, the phrase "in the employ" covers almost every kind of relationship in which one person renders regular and continuing service to another. In the instant case, petitioner was paid a fixed monthly salary for eight years. He reported daily for duty as head of one of respondent's departments. The services he performed benefited respondent. Respondent had the right to discharge him at any time. He participated in an employees' group insurance plan, the premiums for which were deducted by respondent from his salary. Before entering the service, he applied for, and obtained, leave of absence from respondent. Viewing the circumstances as a whole, I believe that this case in principle is sufficiently like Kay v. General Cable Corp., supra, to warrant the same conclusion, that petitioner is eligible for the protection of the Act.

In determining the second issue, I believe it would be useful to understand the exact nature of petitioner's contention. Between 1934 and 1942, petitioner performed two distinct and separate functions for respondent: (1) Medical director, and (2) medical practitioner. The medical director function, to which alone he seeks restoration, was described as "purely executive work." It involved the establishing and supervising of the "medical setup" of respondent. Among the duties he performed were the review of (1) compensation claims and public liability cases, (2) pre-employment exam-

inations, and (3) reports of inter-current (i.e., non-compensable) illnesses. The 27th Finding of Fact of the lower court reads as follows: "Review of the records which was formerly made by plaintiff is now done by defendant's Safety Department and if any question arises it is referred to the examining physician." The 28th Finding of Fact states: "Review of non-compensable cases formerly made by plaintiff is now handled by defendant's Welfare Department." These findings of fact support the conclusion that *persons in the employ of respondent are still performing a large part of the duties formerly assigned to petitioner.* Therefore, is restoration of petitioner "unreasonable"? In substance, what petitioner contends is that these duties, currently spread over a number of individuals, are required by the statute to be consolidated again into one position which would be very similar to that which petitioner had in 1942.

Is this an unjustifiable request? I think not. To hold otherwise is tantamount to asserting that, whenever an employer has split a job among other employees, as was common during the acute manpower shortage, the statutory provision requiring restoration of the returning serviceman would not be applicable. Effectually, the statutory provision would thereby be diluted to a status of wishful thinking.

In defense against the instant petition, respondent has stressed that, between 1934 and 1942, the insurance carrier had reimbursed respondent for the salary paid petitioner; and that the contract with the present insurance carrier in 1944, besides eliminating the reimbursement provision, resulted in a shift, to the carrier, of some of the duties which petitioner's department had performed.

Had the employment of petitioner been contingent upon reimbursement by the insurance carrier, the question of who furnished the money to pay petitioner might have some validity; but that is not the case at bar. Petitioner had only one agreement, and that was with respondent. Respondent, not the insurance carrier, paid petitioner each month. Petitioner testified without contradiction that he did not know of the reimbursement arrangement. In 1942, surely respondent could not have avoided pay-

ment of petitioner's salary on the ground that the insurance carrier was bankrupt or had refused reimbursement.

The record is not clear as to the status of the medical director position between petitioner's departure for the colors and the consummation of the present insurance contract. Had respondent introduced evidence that a replacement for petitioner had been secured between 1942 and 1944, and that that replacement had been discharged as a result of the present insurance contract, there would be tangible evidence of a substantial change of circumstances. Instead, however, respondent's sole witness testified only that an investigator in petitioner's department "went back to the carrier from whom we employed him; he was no longer employed by the company." This is a far cry from proving that the contract would have meant the discharge of petitioner, had he been performing his duties at that time, particularly since respondent's own employees still perform a large part of those duties.

The majority opinion states that petitioner's position "may in a sense be called temporary in that it existed only so long as the insurance carrier permitted the particular arrangement by delegating its duties to the appellee." I cannot agree that the duty of supervising the health of respondent's employees is primarily that of the insurance carrier. Respondent is financially liable for compensable injuries suffered by its employees; and efficiency of operation demands that the respondent guard the general health of its employees for both compensable and non-compensable injuries and ailments. That respondent has contracted with an insurance carrier to perform part or all of this function does not shift the responsibility.

In a previous decision of this court, the following statement was made: "Every consideration of fairness and justice makes it imperative that the Statute should be construed as liberally as possible so that military service should entail no greater setback in the private pursuit or career of the returning soldier than is unavoidable." Kay v. General Cable Corp., 144 F.2d at page 654. To the same effect, see Fishgold v. Sullivan Drydock & Repair Corp., 1946, 328

U.S. 275, 285, 66 S.Ct. 1105, 90 L.Ed. 1230, and Trailmobile Co. v. Whirls, 67 S.Ct. 982, at page 991; and see Trust Funds, Inc., v. Dacey, 1 Cir., 160 F.2d 413. The decision of the majority in the case at bar seems to me a substantial and serious inroad upon that precept, the soundness of which I deem unimpeachable.

For the reasons stated, I believe that the judgment of the lower court should be reversed and the case remanded for appropriate action.