**COX v. BOSTON CONSOL. GAS CO.**

No. 5215.

District Court, D. Massachusetts.

Aug. 30, 1946.

Edmund J. Brandon, U. S. Atty., and William T. McCarthy, Asst. U. S. Atty., both of Boston, Mass., for plaintiff.

William M. Brady, C. Russell Walton, and James S. Eastham, all of Boston, Mass., for defendant.

WYZANSKI, District Judge.

This is a suit by an ex-service man seeking re-employment under the provisions of section 8(b) of the Selective Training and Service Act of 1940, as amended, 50 U.S. C.A.Appendix, § 308(b). The defendant employer has filed a motion for summary judgment in which it asserts that, as disclosed in an agreed statement of facts, plaintiff failed to apply seasonably for re-employment.

These are the facts so far as material. In August, 1942, defendant was employing plaintiff as Collection Supervisor of Accounts. August 26, 1942, plaintiff was inducted as an enlisted man into the United States Army under the provisions of the Selective Training and Service Act. In December, 1942, and at various other times prior to April 1, 1943, plaintiff, who was born June 21, 1900, applied for release from military service in order to engage in essential civilian activities. The latest of these applications was made by plaintiff in March, 1943, and was accompanied by a letter dated March 11, 1943, from Bethlehem Steel Company offering to become plaintiff's employer. At the time of the latest of these applications the governing principles applied by the Army were set forth in War Department Circular 39, issued February 4, 1943. This circular was superseded on April 3, 1943, by War Department Circular 92 which, however, (as explained in Local Board Memorandum No. 80A, issued April 1, 1943) was not applicable to the exceptional case of enlisted men who submitted applications for release and discharge prior to April 1, 1943. Pursuant to Circular 39, the Army unconditionally discharged plaintiff on April 7, 1943. From April 27, 1943, until June 1, 1943, plaintiff was employed by Bethlehem Steel Company. He left solely because he did not like the "difficult traveling conditions to and from work." From June 3, 1943, to August 16, 1945, he was employed by Raytheon Manufacturing Company which was also engaged in an essential war industry. September 26, 1945, plaintiff applied to defendant for reinstatement, which on October 2, 1945 defendant refused.

The Selective Training and Service Act provides that a veteran is entitled to re-employment under section 8(b) only if he, inter alia, "(3) makes application * * * within forty days [or, in cases to which the Act of December 8, 1944 applies, ninety days] after he is relieved from such training and service."

Obviously plaintiff in the case at bar made application within the prescribed time only if the time is calculated from August 16, 1945, when he left Raytheon until September 26, 1945, when he applied to defendant. If the calculation is made from either April 7, 1943, when he was unconditionally discharged from the Army or from June 1, 1943, when he left Bethlehem, he has failed to meet the statutory condition.

In my opinion the calculation should be made from April 7, 1943. On that date, under the procedure then applicable, plaintiff was unconditionally discharged and relieved from military service. Unlike persons discharged under War Department Circular 92 [such as plaintiff in Tipper v. Northern Pac. Ry., D.C.W.D.Wash., 62 F. Supp. 853 as explained in Bulletin No. 12, National Headquarters of Selective Service, April 29, 1946], he was unconditionally discharged. He was not retained by the Army in a reserve or any other status. He was free to abandon his job at Bethlehem; and in fact he did so when he wished to go elsewhere. Thus, he was free any time after April 7, 1943, to return to his occupation in defendant's enterprise.

But plaintiff urges that this was only a nominal legal freedom which he could not exercise without a breach of moral obligation to the Army and without the practical risk of re-induction.

It does not lie in this plaintiff's mouth to assert that he was under a moral duty to remain at Bethlehem,—for it is plain that when he left Bethlehem to go to Raytheon, he himself construed his moral obligation as being no more than (if as much as) a

duty to work in some essential civilian job; and it is undeniable that plaintiff's former job with defendant fell within that description since it has been stipulated that defendant "was classified as in an Essential Industry by the War Manpower Commission according to Local Draft Board Memorandum No. 115."

So far as the practical risk of re-induction is concerned, there are two answers. The first is that plaintiff has not shown that in 1943 there was a practical risk of re-induction of a 43-year old man who had served for 8 months in the Army and had been honorably discharged. A second answer is that the fact that a discharged soldier runs the risk of re-induction in the Army is not a legal excuse for not making prompt application for re-instatement to his old job. The language of the Congressional Act limits the employer's obligation of reinstatement to cases where the employee has remained in the armed forces until 40 (later 90) days before he applied for reinstatement. The exact words of the statute cover only the case where the veteran "makes application for reemployment within forty [or as later changed, ninety] days after he is relieved from such training and service." There may be persuasive legislative reasons why Congress did not extend the employer's obligation to cases where the employee after being discharged from the Army waited more than 90 days and in the meantime took civilian employment with some company that the Army or the War Manpower Commission or he regarded as more essential to winning the war than was his former employer. Congress may have thought that such an employee resembled less a recently discharged soldier than an employee who (either with or without prior military service) had been directed by the War Manpower Commission to leave a job with one employer in order to take a job with another employer who was regarded by the Commission as being engaged in a more essential war industry. The employee who was thus shifted would have no statutory right to return to his first job. And Congress may have thought that persons in the class of plaintiff in this suit do not deserve better treatment,—since they too have been relieved of the perils and discomforts of military service and have acquired the benefits of working under the wages, hours and other conditions characteristic of essential war industries. Moreover, Congress may have taken the view that the special benefits of the reinstatement provisions of the Act, which of course create corresponding difficulties for other employees, for labor organizations and for employers, ought to be allowed only in cases where a man as a result of military service has been kept continuously out of civilian life, out of the possible financial rewards of civilian employment, and out of the shops, plants and farms where he could maintain and improve the technical skill of his calling.

Nor is it without significance that when Congress amended the statute on December 8, 1944, in the very amendment upon which plaintiff necessarily relies as the fundament of his case, Congress specifically extended the period of 90 days for the benefit of veterans who had undergone "hospitalization continuing after discharge for a period of not more than one year." The extension of time for a veteran who entered a hospital for one year or less seems, under the familiar statutory principle of expressio unius, exclusio alterius, to imply that Congress did not intend an extension of time for a veteran who entered an essential war industry for an indefinite number of years. But see Note 59 Harvard Law Review 593, 595 note 15.

If a precedent were necessary for my conclusion that plaintiff should not prevail, it could be found in Ebert v. Poston, 266 U.S. 548, 45 S.Ct. 188, 69 L.Ed. 435, interpreting sections 100 and 205 of the Soldiers' and Sailors' Civil Relief Act of March 8, 1918, 40 Stat. 440, 443, 50 U.S. C.A.Appendix, §§ 101, 116. That case held that where an Act of Congress provided for stays of proceedings to foreclose soldiers' mortgages where the proceedings were taken during the military service of the owner of the mortgaged property, a court could not extend the Act by interpretation to cover the case of a foreclosure sale by advertisement made prior to the passage of the Act and prior to the mort-

gagor's military service. Mr. Justice Brandeis said 266 U.S. at page 554, 45 S.Ct. at page 190, 69 L.Ed. 435, "Persuasive legislative reasons for distinguishing between the cases explicitly cared for by sections 302, 205, and the present case suggest themselves. We have no occasion to state them. The judicial function to be exercised in construing a statute is limited to ascertaining the intention of the legislature therein expressed. A casus omissus does not justify judicial legislation. Compare United States v. Weitzel, 246 U.S. 533, 543, 38 S.Ct. 381, 62 L.Ed. 872. This act is so carefully drawn as to leave little room for conjecture."

If I am mistaken in my view that plaintiff's time to reapply for his job at defendant's business began to run on April 7, 1943, the date plaintiff was discharged from the Army, his time certainly began to run on June 1, 1943, the date he voluntarily left Bethlehem's employment. So in any event there should be

Judgment for defendant.