**PARLIMAN v. DELAWARE, L. & W. R. R.**
No. 9321.

Circuit Court of Appeals, Third Circuit.

Argued May 22, 1947.

Decided Sept. 19, 1947.

Edgar H. Rossbach, U. S. Atty., and Edw. V. Ryan, Asst. U. S. Atty., both of Newark, N. J., for appellant.

Donald R. Creighton, of New York City, for appellee.

DeVoe Tomlinson, of Newark, N. J., and Willard H. McEwen, of Toledo, Ohio (Mulholland, Robie & McEwen, of Toledo, Ohio, on the brief), for intervenors.

Before MARIS, McLAUGHLIN, and KALODNER, Circuit Judges.

KALODNER, Circuit Judge.

The primary issue presented by this appeal is whether an Army discharge under the provisions of Section 11, War Department Circular No. 39, dated February 4, 1943, providing for the discharge of enlisted men 38 years of age and over to enter essential

industry, constituted an unconditional discharge from military service.[1]

The appeal is from an order of the District Court entering judgment for the appellee railroad in an action brought by the appellant, a veteran, for enforcement of certain rights, under Section 8(e) of the Selective Training and Service Act of 1940, as amended, 50 U.S.C.A.Appendix, § 308(e).

The following set of facts presents the question involved. The appellant entered the service of the appellee railroad sometime in 1937 and continued in various jobs until April 30, 1940, at which time he became a bridge deckman.[2] On that date he obtained his seniority status in his new position. He continued to work until November, 1942, when he was inducted in the Army. He was then 40 years old. Shortly after his induction the appellant wrote to one Kiernan, general foreman of the appellee railroad asking him to write to the appellant's superior officer stating that the railroad was engaged in essential industry and would re-employ him if he were released from service. The appellant did so in order to avail himself of the benefits of the War Department Circular No. 39. No answer was received by the appellant from the railroad. The appellant thereupon communicated with the Universal Carloading Company, an essential industry, and received in reply an offer of employment. As a result he was granted an honorable discharge from the Army on April 9, 1943. The discharge recited that it was given pursuant to the provisions of War Department Circular No. 39.

The appellant went to work for the Universal Carloading Company several days after his honorable discharge and continued in that employment until September 13, 1945. He made his first application for re-employ-ment to the appellee in the summer of 1944 —more than a year after his discharge from the Army. On September 21, 1945, the appellant applied to the railroad for re-employment and asked to be reinstated in the position which he occupied at the time of his induction into the Army. He was advised after discussion with Kiernan and the union that he could only return as a new employee. The appellant thereupon began to work for the railroad on September 24, 1945, and continued his employment until November 23, 1945, when he was furloughed because of the return of two of the railroad's employees from their Army service and their restoration to their prior jobs. He subsequently worked for some 27 days between November 23, 1945 and April 5, 1946.

It is conceded that if the appellant had obtained his old seniority date, April 30, 1940, he would have earned $508.26 more than he did during this period.

On April 9, 1946, according to appellant's testimony, he was given a "steady job" as bridge deckman without restoration of seniority and at the time of trial he was still employed by the railroad.

The appellant testified that during his employment by the Universal Carloading Company he repeatedly visited his Draft Board to obtain a "release" from his job so that he could return to work for the railroad. He said he made seven such visits. The appellant testified that it was not until September 13, 1945, that he "was released from the Draft Board to go to my old job."

A letter from the appellant's Draft Board, dated November 27, 1945, Exhibit "A" in appellee's Answer to the appellant's petition in the Court below, discloses that the appellant "called at this office to request

---

[1] Circular No. 39 provided for the discharge of an enlisted man 38 years of age and over who had, among other things,

(1) attained his 38th birthday on or before February 28, 1943.

(2) enlisted or was inducted into the Army on or before February 28, 1943.

(3) (a) prior to May 1, 1943, voluntarily submitted to his immediate commanding officer written request for discharge. * * *

(4) presented evidence in the form of a letter or statement from a prospective employer, the United States Employment Service, farm agent, or other responsible person to the effect that the individual concerned will be employed in essential industry, including agriculture, if he is discharged from the Army.

[2] A bridge deckman acts as an assistant to a bridge tender. His duties are connected with the opening and closing of railroad drawbridges.

permission to change his job, but he was informed by the Chief Clerk of the Draft Board that he could not leave an essential wartime occupation; that this was a direct order of the Draft Board," and it was not until September, 1945, that he "was then told by the same Chief Clerk that he could now change his job." The Draft Board's letter states that the appellant's "problem was never presented to the Draft Board for a decision * * *." and that the "Chief Clerk took it upon himself to tell Mr. Parliman that * * * he would have to stay there," i. e., the Universal Carloading Company.

Recognizing that under Section 8(b) of the Selective Training and Service Act of 1940, as amended, the veteran's application for re-employment must be made "* * * within ninety days after he is relieved from * * * training and service * * *," the appellant contends that his application for re-employment was timely; that his Army discharge on April 9, 1943, was not absolute but conditional; that the condition in his case, i. e., his employment with the Universal Carloading Company, did not expire until September 13, 1945, when he was "released" by the Draft Board and that consequently the ninety day period began to run from that date. Appellant further contends that he was "legally retained in a reserve status by operation of War Department Circular No. 92."

In answer to these contentions appellee urges that the appellant received an absolute and unconditional discharge from his military service on April 9, 1943, as evidenced by his certificate of honorable discharge, and that the appellant has failed to comply with the provisions of Section 8(b) inasmuch as he did not make application for re-employment until the summer of 1944, more than a year after his Army discharge.

It is clear that the determination of the controversy between the parties hinges primarily upon the question as to whether or not the discharge on April 9, 1943, was an absolute or unconditional discharge. As to this we are of the opinion that the discharge on April 9, 1943, was an absolute discharge and that consequently, the appellant's application for re-employment not having been made until more than a year after his discharge, he has failed to bring himself within the purview of Section 8(b) requiring such application to be made within 40 days of the date of discharge, under then existing law.[3]

The relevant portion of the Army discharge of April 9, 1943, reads as follows:

"This is to certify that William A. Parliman * * * is hereby honorably discharged from the military service of the United States by reason of * * * to accept employment in an essential war industry per Sec. II, Cir. 39, W.D. 1943 * * *."

In view of the reference in the discharge to War Department Circular No. 39, examination of that circular becomes pertinent. Circular No. 39 provided for the *discharge* of an enlisted man 38 years of age and over who had, among other things, attained his 38th birthday on or before February 28, 1943, and had enlisted or been inducted into the Army on or before that date and had prior to May 1, 1943, voluntarily submitted written request for discharge and presented evidence in the form of a letter or statement from a prospective employer to the effect that he would be employed in essential industry, including agriculture, if discharged from the Army. Circular No. 39 provided that in all cases of discharge under its authority, the discharge should contain an endorsement that the service man was discharged under its provisions. The discharge in question was so endorsed.

As pointed out by counsel for the appellee, the word *discharge* is used continually throughout Circular No. 39 and no qualifying words appear anywhere as to the nature of the discharge from service. That the *discharge* under Circular No. 39 was regarded by the Selective Service authorities as an *absolute* and *outright* discharge is clearly evidenced in Local Board Memorandum No. 80-A issued April 1, 1943, by National Headquarters, Selective Service System, Washington, D. C., under signature of Lewis B. Hershey, director.

---

[3] The period was extended to 90 days by the Act of Dec. 8, 1944, 58 Stat. 798.

Paragraph 1 of Local Board Memorandum No. 80-A reads as follows:

"1. *Discharge of enlisted men over 38 to become engaged in essential activities discontinued*—Effective as of April 1, 1943, the War Department has discontinued the practice of granting *outright discharges* to enlisted men who attained their thirty-eighth birthdays on or before February 28, 1943, and who requested release from active service in order to become engaged in essential activities. *Exception will be made in the case of enlisted men who submitted applications for release prior to April 1, 1943.* * * *" (Emphasis supplied)

In subsequent paragraphs of Memorandum No.80-A provision was made for *release from active service and transfer to the Enlisted Reserve Corps* of unlisted men 38 years of age and over who obtained employment in an essential activity or agriculture. The Memorandum specifically provided that failure to continue employment in an essential activity or agriculture would result in the enlisted man's "immediate recall to active duty." It also provided that an enlisted man released from active service and tranferred to the Enlisted Reserve Corps to engage in essential activity must report to his local Selective Service Board, and imposed certain duties of supervision over the released individual. Finally, the Memorandum provided in paragraph 9 that "an enlisted man who is released from active duty and transferred to the Enlisted Reserve Corps continues to be a member of the Armed Forces * * *."

In accordance with Memorandum No. 80-A, the War Department on April 3, 1943, issued Circular No. 92 which rescinded Circular No. 39 as of April 1, 1943. Circular No. 92 embodied the provisions of Memorandum No. 80-A so that under it over-age enlisted men who were released from active service to enter essential industry were transferred to the Enlisted Reserve Corps and failure to remain employed in essential industry subjected the enlisted man to immediate recall to active duty.

It must be kept in mind that Memorandum No. 80-A in discontinuing the practice of granting *outright* discharges to enlisted men 38 and over specifically provided "exception will be made in the case of enlisted men who submitted applications for release prior to April 1, 1943." It is undisputed in the instant case that the appellant submitted his application for release prior to April 1, 1943, and was therefore excepted from the operation of Circular No. 92, and that he was discharged under the provisions of Circular No. 39, as noted on his discharge.

Our views on this score are in agreement with those expressed in Cox v. Boston Consol. Gas Co., 1 Cir., 1947, 161 F.2d 680. In that case the service man was discharged on April 7, 1943, under authority of Circular No. 39, pursuant to applications for release to enter an essential industry filed prior to April 1, 1943. The Court in a per curiam opinion affirmed the holding of the District Court, 1946, 67 F.Supp. 742, that the discharge was properly granted under Circular No. 39 and that the discharge was "unconditional."

Further, the Selection Service System's own interpretation, as stated in Memorandum No. 80-A, that a discharge under Circular No. 39 was an "outright" discharge is of course entitled to great weight and consideration. As was stated in Tipper v. Northern Pac. Ry. Co., D.C.1945, 62 F. Supp. 853, 854, :

"In construing the Act as it now exists and applies to this particular case, this Court does give great weight and consideration to the regulations of the Director of Selective Service."

Appellant makes the bold contention that the War Department authorities did not *at any time* have authority to issue an "outright" discharge as was the practice under Circular No. 39. In support of that contention the appellant cites Section 3(c) of the Selective Training and Service Act of 1940, as amended, 50 U.S.C.A.Appendix, § 303(c), and Section 4 of the Service Extension Act of 1941, 50 U.S.C.A.Appendix, § 354.

Section 3(c) of the Selective Training and Service Act provides in part as follows:

"Each such man, after the completion of his period of training and service under subsection (b), shall be transferred to a reserve component of the land or naval

forces of the United States; and until he attains the age of forty-five or until the expiration of a period of ten years after such transfer, or until he is discharged from such reserve component, whichever occurs first, he shall be deemed to be a member of such reserve component and shall be subject to such additional training and service as may now or hereafter be prescribed by law: * * *"

Section 4 of the Service Extension Act of 1941, which authorized the release of persons from active duty if in the opinion of the Secretary of War their rentention in service subjected them, their wives or dependents to undue hardship, provides in part as follows:

"Any person so released shall be transferred to, or remain in, as the case may be, a reserve component of the land forces for the same period and with the same rights, duties, and liabilities as any person transferred to a reserve component of the land rorces under the provisions of section 3(c) of such Act."

From the two sections cited appellant argues that it was the clear intent of Congress to create and maintain a strong reserve for use in emergencies and that it was mandatory on the War Department to transfer such persons as the appellant to the Enlisted Reserve.

We cannot subscribe to the appellant's contention on that score. That it was the Congressional intent to permit outright discharges of enlisted men is apparent from Section 3(b) of the Selective Training and Service Act of 1940 to which it may be noted reference was made in Section 3(c). Section 3(b) provides in part as follows:

"Each man inducted under the provisions of subsection (a) shall serve for a training and service period of twelve consecutive months, *unless sooner discharged,* * * *" (emphasis supplied).

That the War Department granted outright discharges to thousands of enlisted men under provisions of Section 3(b) and under War Department Circular No. 39 during the war is a fact of which we can well take judicial notice.

The appellant finds himself in a somewhat anomalous position with respect to his contention that the Army never had a right to grant him an outright discharge. It is unquestioned that he was never transferred to the Enlisted Reserve and he accordingly has no discharge from the Reserve. If his discharge from active service on April 9, 1943, was void then he has never been discharged and if so he cannot avail himself of the benefits of Section 8 of the Selective Training and Service Act of 1940 under which he brought his action since the Section provides in subsection (b) that as a prerequisite to the assertion of re-employment and seniority rights the veteran must have received a "certificate" that he has satisfactorily completed his period of training and service under Section 3(b) previously discussed.[4] Section 8(a) provides for the issuance of the certificate upon completion of training and service.[5]

Finally, appellant urges that the re-employment and seniority provisions of the Selective Training and Service Act be given a "liberal" construction because his is a "hardship" case. He points to the fact that he in good faith followed the instructions of the Chief Clerk of his Draft Board and remained with the Universal Carloading Company until he was "released" in September, 1945; that he was "frozen" in his position with the Universal concern under the regulations of the War Manpower Commission; that he "lived up" to his moral

---

[4] Section 8(b) provides, in part:

"In the case of any such person who, in order to perform such training and service, has left or leaves a position, other than a temporary position, in the employ of any employer and who (1) *receives such certificate,* (2) is still qualified to perform the duties of such position, and (3) makes application for reemployment within forty days after he is relieved from such training and service— * * *." (emphasis supplied)

[5] Section 8(a) provides in part:

"(a) Any person inducted into the land or naval forces under this Act for training and service, who, in the judgment of those in authority over him, satisfactorily completes his period of *training and service* under section 3(b) *shall be entitled to a certificate to that effect upon* the completion of such period of training and service * * *."

(and legal) obligation to the Army to stay in the employ of the company, employment by which was the indispensable prerequisite for his "release"; and that "his actions were proper and reasonable under the circumstances."

It is difficult under the circumstances not to sympathize with the predicament in which the appellant finds himself. However, he is seeking here to assert a statutory right and in order to prevail he must bring himself within the terms of the statute creating it. Plainly the statute does not confer upon the appellant the right asserted. It has not established re-employment or seniority rights for one who, after completing his period of military service has entered private employment and has subsequently been released therefrom. The appellant was absolutely and unconditionally discharged from his military service on April 9, 1943, and he failed to comply with the then existing statutory requirement that he exercise his re-employment rights within 40 days thereafter. His own testimony discloses that he failed to make application to the appellee for re-employment until the summer of 1944, more than a year after his discharge. Whatever may be the reason for his failure to comply with the statutory requirement in this respect, whether he was misled by the Draft Board official, whether he acted in good faith, whether or not he was in fact "frozen" in his Universal Carloading Company job, the Courts cannot by judicial decree post-date his Army discharge to correspond to the date of the termination of his private employment so as make available to him the benefits of Section 8.

Section 8 creates special rights for the benefit of former service men. In doing so it specifically prescribes a procedure which must be complied with before its benefits become available. The appellant having failed to comply with the terms of the statute, he cannot avail himself of its benefits.

While as we stated in Grasso v. Crowhurst, 3 Cir., 154 F.2d 208, 210, 211, "every consideration of fairness and justice makes it imperative that the Statute should be construed as liberally as possible * * *." Nevertheless "* * * such liberal construction, of course, should not be carried to the point where it does violence to the Act itself." Tipper v. Northern Pac. Ry. Co., supra, 62 F.Supp. at page 854. Cf. Fishgold v. Sullivan Drydock & Repair Corp., 328 U.S. 275, 66 S.Ct. 1105, 90 L.Ed. 1230, 167 A.L.R. 110.

In construing a provision of the Federal Soldiers' and Sailors' Civil Relief Act, March 8, 1918, 50 U.S.C.A.Appendix, §§ 101, 116, the Supreme Court of the United States in Ebert v. Poston, 266 U.S. 548, at page 554, 45 S.Ct. 188, 190, 69 L.Ed. 435, stated the rule as follows:

"The judicial function to be exercised in construing a statute is limited to ascertaining the intention of the Legislature therein expressed. A casus omissus does justify judicial legislation." (emphasis in text)

Appellant has cited Tipper v. Northern Pac. Ry. Co., supra, in support of his position. In that case, however, the veteran was not discharged from the Army but was released from service and placed in the Enlisted Reserve Corps under the provisions of Circular No. 92. He was not finally discharged until termination of his Reserve status and he made his application for re-employment within the required period after his discharge. *The Court held that the veteran's right to reinstatement matured when he received his honorable discharge.* We agreed with that ruling in Van Doren v. Van Doren Laundry Service Inc., 3 Cir., 162 F.2d 1007.

For the reasons stated the judgment of the District Court will be affirmed.