## Polanskey et al., Appellants, *v.* Monongahela Railroad Company et al.

Argued March 28, 1941. Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*J. Wray Connolly,* with him *James H. Gray* and *James D. Gray,* for appellants.

*E. E. McMonigle,* with him *Richard K. Sharpless, Dalzell, McFall & Pringle* and *Sidney J. Watts,* of *Baker & Watts,* for appellees, were not heard.

Opinion by Mr. Justice Linn, April 14, 1941:

Plaintiffs, members of the Order of Railway Conductors of America, filed their bill against Monongahela Railway Company, engaged in interstate railroad operation in Pennsylvania and West Virginia. On defendant's petition, the Order of Railway Conductors of America and the Brotherhood of Railway Trainmen, both unincorporated associations, were made parties defendant.

An undated agreement, apparently made in 1927 by representatives of the two unincorporated associations, was attached to and made part of the bill. It was entitled: "Agreement Between the Chairmen of the General Grievance Committees Representing the Order of Railway Conductors and Brotherhood of Railroad Trainmen in Regard to the Roster Standing of the Employes of the Pennsylvania Railroad, Who May Desire to Forfeit Their Present Seniority Forever and Become Employees of the Monongahela Railway With Seniority Date as of January 1st, 1927, on Account of the Monongahela Railway Company Absorbing a Portion of the Pennsylvania Railroad and the Chartiers Southern Railway; These Properties Now Being Known as the Ten Mile Run and Nemacolin Branches of the Monongahela Railway Company."

Plaintiffs prayed that the defendant company be restrained from depriving them of seniority rights claimed under the agreement. The defendant company, inter alia, averred "that its only interest in the matter . . . has been to execute the Agreement which its Chartiers Southern Trainmen and it Monongahela Railway Trainmen, by their representatives, made for their mutual benefit and satisfaction; that said Agreement should have been construed and interpreted by the two groups just mentioned, or by their representatives, to their mu-

tual satisfaction; that no matter which way defendant construed the Agreement provisions now in issue, either Monongahela Railway Trainmen or Chartiers Southern Trainmen or both would have objected, and that though defendant believes its construction of the controversial provisions of said Agreement to be the correct one, none the less the basic controversy in this equitable proceeding is not between defendant and its employees, but rather between the two aforesaid groups of defendant's employees."

The Brotherhood of Railway Trainmen and the Order of Railway Conductors of America filed answers, each stating its position, the Trainmen's organization asserting that the issue, if any, "lies between the Order of Railway Conductors of America and the Brotherhood of Railroad Trainmen"; the Conductors' association answered that it was not a necessary party to the suit and "there is no pending controversy as between plaintiffs and this defendant association." After hearing, the bill was dismissed.

The plaintiffs appealed. Briefs were filed on behalf of plaintiffs and the Brotherhood of Railway Trainmen, but no brief or argument was presented on behalf of the railway company or of the Order of Railway Conductors of America.

In 1927, the defendant Monongahela Railway, took over a portion of the line of the Pennsylvania Railroad Company, whereupon plaintiffs, employed by that company, became defendant's employees. In adjusting conflicting seniority rights of plaintiffs and the other employees of defendant, the agreement, referred to above, was made by the Order of Railway Conductors and the Brotherhood of Railway Trainmen, providing, in the words of the bill, that "for the purpose of seniority of employees" the transferred branch "should be treated as an individual railroad unit and that the plaintiffs herein should have seniority over any other employees of the Monongahela Railroad Company, in so far as said Chartiers Southern Branch was concerned."

In 1930, the defendant company constructed an extension to the transferred branch. For about nine years thereafter the extension, for seniority purposes, was treated as part of the branch originally transferred, and plaintiffs enjoyed the preferential rights claimed under the agreement. During this period, the Order of Railway Conductors was the certified bargaining agent for the class of employees represented by plaintiffs. In February, 1939, however, a new election resulted in the certification of the Brotherhood of Railway Trainmen. The learned court below found that "Immediately after the election of BRT as bargaining representative for the employees of Railway, it was requested and demanded by such bargaining agent that Railway equalize employment among all its employees as to the Extension by considering it a part of the general trackage of Railway, whereby plaintiffs would not be entitled to prior seniority but only to such rights as would arise under their roster date of January 1, 1927, and that plaintiffs be excluded from employment on the Extension until such time as other employees of the Railway had been equalized in number of work hours enjoyed by plaintiffs under their claim of prior seniority. . . . To this construction of the agreement, . . . Railway acquiesced and, at the request of BRT, replaced three of plaintiffs with employees from other portions of its system, thus depriving plaintiffs of the rights of prior seniority which they claimed and which they had enjoyed for some nine years over Extension."

One difficulty with plaintiffs' position is that the defendant, against whom an injunction is asked, was not a party to the only contract pleaded or proved. It was signed only by representatives of the two competing associations of employees. Plaintiffs contend that the Monongahela Railway has adopted this contract as its own by recognizing its provisions, as stated; but the proofs only show that the Railway's policy has been to accede to the seniority demands of the certified bargaining agent.

.While a contract between employer and employee with respect to such rights may support an action,[1] it has been held that an employee "has no inherent right to seniority in service, . . . . except as provided for in the contracts entered into and the rules adopted by the company relating thereto." *Ryan v. New York Central R.*, 267 Mich. 202, 255 N. W. 365, 367 (1934).

. .Because of the inadequacy of the record, both in plaintiffs' pleadings and proofs, it is unnecessary to consider whether, in view of the Railway Labor Act, 45 USCA § 151 et seq., there is ground for the exercise of equitable jurisdiction,[2] or in what circumstances plaintiffs may contest the construction of their rights by their certified bargaining agent.

Decree affirmed, each party to bear its own costs on appeal.

---

[1] See cases considered in Christenson, "Seniority Rights Under Labor Union Working Agreements," 11 Temple L. Q. 355 (1937); Note, 47 Yale L. J. 73 (1937).

[2] Compare *Bell v. Western Ry.*, 228 Ala. 328, 153 So. 434 (1934), decided before the 1934 amendment. But see *Stephenson v. New Orleans & N. E. R.*, 180 Miss. 147, 177 So. 509 (1937); *Long v. Van Osdale*, 26 N. E. 2d 69 (Ind. 1940) (reversed on other grounds, 29 N. E. 2d 953). See, generally, Garrison, "The National Railroad Adjustment Board: A Unique Administrative Agency," 46 Yale L. J. 567 (1937), and authorities cited supra note 1.