UNITED STATES ex rel. UNRUH v. NORTH AMERICAN CREAMERIES, Inc., et al.

Civ. No. 1214.

District Court, D. North Dakota, S. D.

Feb. 10, 1947.

P. W. Lanier, U. S. Dist. Atty., of Fargo, N. D., for petitioner.

C. W. Burnham, of Carrington, N. D., for respondent North American Creameries, Inc.

Quentin N. Burdick, of Fargo, N. D., for respondents, Teamsters' Union Local No. 116 and F. R. Layne, Chairman of the Grievance Committee of Teamsters' Union Local No. 116.

VOGEL, District Judge.

This case is brought under the provisions of the Selective Training and Service Act of 1940, 54 Stat. 885, 50 U.S.C.A.Appendix, § 308, by the United States of America upon relation and for the use and benefit of Orville J. Unruh, an honorably discharged veteran of World War II. The defendants are North American Creameries, Inc., Unruh's former and present employer, and Teamsters' Union Local No. 116 and F. R. Layne, Chairman of the Grievance Committee of Teamsters' Union Local No. 116.

The complaint asks for judgment restoring Unruh "to his position with said North American Creameries, Inc., under his seniority rights and for judgment for such sum as will compensate him for lost wages and compensation from January 10, 1946, to the date of the hearing * * *" and "for an injunction enjoining the respondent Teamsters' Union No. 116, F. R. Layne and all other persons from interfering with or molesting said Orville J. Unruh in the performance of his duties in the employment of said North American Creameries, Inc." Unruh, for whose benefit the action has been instituted, has stated in open court that he desired no money judgment against the North American Creameries, Inc., and his counsel has advised the Court that in view of Unruh's desire not to obtain a money judgment against the creamery, he believed no money judgment should be given against any of the defendants. Accordingly, that portion of the prayer for

relief asking for a money judgment will be disregarded.

The facts pertinent to a determination of the issue are as follows:

Orville J. Unruh was first employed by the North American Creameries, Inc., in the fall of 1936. He was what is known as a seasonal employee, the time of his employment depending on the employer's business, the weather and the condition of roads over which the employer's trucks traveled. Generally, the employment ran from some time in April (seldom later than June 1st) until the middle or latter part of December of each year. Unruh continued such seasonal employment with North American Creameries, Inc., for the years 1937, 1938, 1939, 1940 and 1941. He received his last regular seasonal lay-off in December, 1941. Unruh was not thereafter re-employed prior to his induction into United States military service July 2, 1942.

It was the general custom each spring for seasonal employees to return to the employer's plant when the weather and other conditions indicated to them that trucking on the highways would be commenced. Such seasonal employees then reported for work or advised the employer as to their availability. It was not the general custom for the employer to call the employees back. Such general custom, however, was not invariable, and the record indicates that on occasions the manager of the employer did call employees back to work when they were needed. Unruh was not called back to work at any time between December, 1941, when he was laid off, and July 2, 1942, when he entered military service, nor during such time did he appear at the employer's plant and indicate his availability for employment.

During a portion of the period we are now referring to, and beginning with the week ending April 11, 1942, until June 27, 1942, Unruh did obtain employment by the Haggart Construction Company at a wage greater than he would have earned had he been employed by the North American Creameries, Inc. It was customary for seasonal employees to seek other means of livelihood during the lay-off period and he claims his employment by the Haggart Construction Company was of such a nature. He testified that he considered himself an employee of North American Creameries, Inc. The manager of the North American Creameries, Inc., also considered him an employee for he stated in the record (Tr. 36), "Well, I knew he was going to be inducted and that is why I didn't call him." There is further testimony in the record by another employee, Ebentier, who was also a member of the Selective Service and Training Board for that county, that on about June 1, he talked with the manager of the employer and advised him definitely that Unruh was to receive his call for induction on June 19. Such date is after the employer had begun to hire men for the spring work but does not contradict nor preclude the truth of the manager's statement referred to above that Unruh was not called back because he knew he was going to be inducted. The manager did testify under cross-examination that had Unruh reported for work in the spring "he most likely could have gotten on in the middle of May or possibly the first of June." (Tr. 38)

During the time Unruh was in military service, the employees of the North American Creameries, Inc., formed a union, Teamsters' Union Local No. 116, one of the defendants herein, and on September 10, 1943, they entered into a contract with the employer, which contract established the seniority rights of the employees. Such contract is not in evidence. No party to the record desired its introduction.

Unruh remained in the military service until November 21, 1945. On approximately December 1, he returned to the employer's plant and communicated to the manager thereof his desire for re-employment. He advised the manager that he wanted the month of December to himself but that he would be ready to return to work immediately after the first of the year (1946). He was told to be ready on January 2, at which time he did return and did start working. After having so worked for a period of 10 days, he was called in by the employer's manager and advised that at the request of the union he would have to be released. Unruh was accordingly discharged and remained unemployed until

April 26, 1946, at which time he was called back by the employer, put to work, and has remained so working for the employer ever since.

Subsequent to his return to work, he attempted to join the union, which right was denied him for the reason, as stated by him, that this case was coming up.

All of Unruh's rights in the instant action are contained in the Selective Training and Service Act of 1940, 54 Stat. 885, as amended, 50 U.S.C.A.Appendix, § 308, which, in substance, provides that an honorably discharged serviceman who, in order to perform training and service in the land or naval forces of the United States, left a permanent position, shall, if qualified to perform the duties of the position, upon making timely application for re-employment after his discharge, be restored to such position "or to a position of like seniority, status and pay unless the employer's circumstances have so changed as to make it impossible or unreasonable to do so."

The Act also provides that such service man "shall be considered as having been on furlough or leave of absence during his period of active military service, shall be so restored without loss of seniority, shall be entitled to participate in insurance or other benefits offered by the employer pursuant to established rules and practices relating to employees on furlough or leave of absence in effect with the employer at the time such person was ordered into such service, and shall not be discharged from such position without cause within one year after such restoration."

■ The defendants, Teamsters' Union and Layne, challenge Unruh's status as an employee and claim that at the time of his induction into service he was an employee of Haggart Construction Company and that by working for Haggart Construction Company between the week ending April 11, 1942, until June 27, 1942, Unruh lost any rights he might have had to re-employment by the North American Creameries, Inc. I think that contention is not sustained by the record. It was customary for seasonal employees to seek other means of livelihood during the unemployed period of the year, keeping themselves subject to call by the employer or returning to the employer's plant for instructions as to when they could go back to work, and it seems to me that Unruh did little more than this. True, his period of employment by the Haggart Construction Company extended past the normal time for return to work for the North American Creameries, Inc., and North American Creameries did employ other men during that period. It is also true, however, that North American did not request his return and there is the definite statement that their manager knew and, of course, he himself knew, of the imminence of his induction into military service. The manager stated definitely, "I knew he was going to be inducted and that is why I didn't call him." Unruh himself testifies that he considered himself an employee of the North American. Such fact alone would not be sufficient, but the North American Creameries, Inc., also considered him an employee because when, at the request of the union, they prepared a seniority list of employees, they included Unruh's name in such list, giving him number 16 thereon. In other words, both parties to the employment contract considered Unruh an employee, such contention is not inconsistent with the facts, and the Court finds that he did enjoy such status.

We are next confronted with the question of Unruh's rights after his return from service, taking into consideration the fact that a union had been formed during his absence and a contract respecting seniority rights had been entered into between the union and his employer.

■ Liberal construction by the courts is essential to giving proper meaning and true legislative intent to the Act involved. See the United States Supreme Court's opinion in the case of Fishgold v. Sullivan Drydock & Repair Corp. et al., 328 U.S. 275, 66 S.Ct. 1105, 1111: "This legislation is to be liberally construed for the benefit of those who left private life to serve their country in its hour of great need. See Boone v. Lightner, 319 U.S. 561, 575, 63 S.Ct. 1223, 1231, 87 L.Ed. 1587. *And no practice of employers or agreements between employers and unions can cut down the service adjustment benefits which Congress has secured the veteran under the Act."* (Emphasis supplied.)

In the same case, the United States Supreme Court stated: "He acquires not only the same seniority he had; *his service in the armed services is counted as service in the plant* so that he does not lose ground by reason of his absence." (Emphasis supplied.)

The union contends that in no event have Unruh's rights been prejudiced. They point out that he was a seasonal employee all of the time during his prior employment, that no union existed then, and that he never acquired rights greater than those of a seasonal employee, that he was re-employed on April 26, 1946, as a seasonal employee, enjoys such status now, and could have no just complaint.

No contract between employer and employees existed prior to Unruh's induction into military service. He is not now and never has been a member of the union which was formed during his absence.

■■■ While it is true that the record indicates that no seniority rights or seniority list existed prior to the formation of the union and during the time Unruh was employed before being inducted into the armed services, nevertheless the answer filed by the defendant employer contains the following allegation which has not been controverted by the testimony nor denied by any counter pleading: "That at the time the said Orville J. Unruh was laid off from work by respondent, on or about the 31st day of December A.D., 1941, no seniority system was in effect at respondent's place of business; *that employment was given on the basis of industry shown on the part of employees, plus a system of fair play; that the said Orville J. Unruh was considered a good employee,* and probably would have been called back to work at respondent Creamery except for his pending induction; * * *" (Emphasis supplied.)

In other words, while no seniority list existed, it is reasonable to assume from the pleading and the record that all other things being equal, those employees longest in the service of the company were called back first and given preference as to re-employment. When, at the request of the union, the employer made up a seniority list from its records, they included Unruh's name, giving him 16th place. Some employees of the defendant employer were not affected by the so-called slack season. In other words, they were not seasonal employees but remained on the job the year around. The manager of the creamery testified that if Unruh had been employed by the creamery instead of going into the armed services he would have remained as a seasonal employee "for possibly a year or so. * * * But if he had of been here during '33, '34 and '35 most likely he would have been a steady employee." (Tr. 66) (The witness subsequently corrected the statement to show that he meant 1943, 1944 and 1945, such years being a portion of the time Unruh was in military service.) Later in his testimony he definitely said that Unruh would be now classified under that rating (referring apparently to such seniority rating as now exists) as one whose job would be a continuing job the year around. (Tr. 67) In other words, we are confronted with a situation whereby Unruh left a position enjoying no legal or enforceable status other than might have existed by "a system of fair play", and during the time he was in the service of his country his coemployees, through unionization, effected a contract with the employer whereby had he been present and taken part he would now have enjoyed permanent rather than seasonal status. The question is, should, under the terms of 50 U.S.C.A. Appendix, § 308, Unruh be entitled to a seniority rating as a permanent employee and accordingly have been kept on in the employ of the company after he was taken back January 2, 1946? If the answer be "no", it seems to me that the purpose of the Act has been defeated for, as stated by Mr. Justice Douglas in Fishgold v. Sullivan Drydock & Repair Corp., et al., supra: "Thus he does not step back on the seniority escalator at the point he stepped off. He steps back on at the precise point he would have occupied had he kept his position continually during the war."

True, in the Fishgold case, the union existed prior to the employee's induction and the employee there was attempting to obtain an increase in seniority over what he would have had if he had not entered the armed services; and in such respects the

cases are dissimilar. Nevertheless, Congress has indicated and the Supreme Court has so interpreted the intent to be that an employee should not be penalized on his return by reason of his absence from his work. There can be no doubt but what had Unruh remained in employment rather than in army service, he would have acquired a seniority entitling him to the status of a permanent employee. Under the Act, as interpreted, he is not to lose by having been in military service and no practice of employers or agreements between employers and employees or employees' unions can affect or destroy his rights.

A hypothetical case may be illustrative. Suppose, for example, (and this probably is the fact, although the record is incomplete in that regard) there had been another employee who had entered employment by North American Creameries, Inc., at the same time as did Unruh, and at the time Unruh entered military service the other employee enjoyed exactly the same status as Unruh in the "system of fair play" that existed prior thereto. During the time Unruh was serving his country in the army, the other employee joined with his fellows in the formation of a union whereby labor in general gained certain advantages and certain rights. Upon Unruh's return and his demand for re-employment, then if the contention of the union is correct, Unruh must take a place lower in the scale of seniority than his former coemployee who had enjoyed like status with him in 1942. This could mean only that by military service Unruh had been demoted or had lost rights which he would have possessed had he not served his country. Such a solution is contrary to Congressional intent.

This Act may possibly be somewhat difficult of fair and just application when consideration is given, as it should be given, not only to the rights of service men but also to the rights of the workers who produced the armaments and the food to win the war. That difficulty is enhanced greatly when new rights have come into being during the absence of some employees in military service. Selfishness on the part of either group will impede the nation's progress to recovery, burden the shoulders of labor in its struggle for a fair and equitable place in our economic structure, and can only bring discredit to either or both of such groups, to each of which we desire to give respect and thanks. The service man who demands an advantage not given him in the law can, by his actions, only bring discredit upon his fellows and reduce that high public esteem which we hold for those who fought for all. The laborer, who worked and produced at home, who is now selfish of his gains and unwilling to share them with the service man who fought, is only throwing fuel on that fire of public resentment for what is sometimes termed by anti-laborites "the unbridled dictatorship of unions". Unions led by considerate, foresighted, fair-intentioned men might well have anticipated judicial interpretation of this Act by including a clause in labor contracts or by the adoption of resolutions to the effect that gains through organization, negotiation and contract should inure to the benefit of absent service men as fully as if they had been here present working side by side with those who made the gains possible. This, coupled with a like consideration on the part of service men for the contribution to the winning of the war by labor, could bring esteem and honor to both.

This Court is of the opinion that Unruh, upon his return from the service and his having made proper and timely application, was entitled to employment and that he should now enjoy and does possess a seniority rating equivalent to that which he would have possessed had he not been in military service but had been employed during such years.

By such conclusion, this Court does not intend to determine nor could it, under the somewhat unsatisfactory testimony in this case, the exact step on the ladder of seniority that should be occupied by Unruh. This Court makes no attempt, nor could it, to say that Unruh should be No. 14, 15, 16, or any other number on the seniority list. By its opinion, this Court has come to three general conclusions as follows:

1. That for the purposes of the Act Unruh was an employee of North American Creameries, Inc., when he entered military service July 2, 1942.

2. That he is entitled to such seniority rating as he would have enjoyed had he remained in the service of the employer during all of that time when he was serving in the military forces of the Government.

3. That Unruh's discharge in January, 1946, at the request of the union was wrongful and contrary to the intent of the Act involved.

Counsel for the plaintiff is instructed to prepare findings and order consistent with the foregoing, serving copy upon counsel for the defendants, who may have five days thereafter within which to file objections.